Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT
for the
District of _____
Division

**FILED**
FEB 2 4 2021
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

Case No. SA21CA0177 FB
(to be filled in by the Clerk's Office)

Tremont D. Williams

Plaintiff(s)
*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

United States Marshal Service;
GEO group;
Dr. Ghazwan M. Kroma
University Hospital

Defendant(s)
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

Jury Trial: *(check one)*  ☒ Yes  ☐ No

## COMPLAINT FOR A CIVIL CASE

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name: Tremont D. Williams # UM:23411480
Street Address: 910 N. Tyus Rd.
City and County: Groesbeck, Limestone County
State and Zip Code: TX. 76642
Telephone Number:
E-mail Address:

#### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1
- Name: United States Marshal Service
- Job or Title (if known):
- Street Address: 655 E. Ceasar E. Chavez Blvd. Rm 235
- City and County: San Antonio ; Bexar County
- State and Zip Code: Texas, 78206
- Telephone Number: (210) 472-6540
- E-mail Address (if known):

Defendant No. 2
- Name: GEO group
- Job or Title (if known):
- Street Address: 1777 NE Loop 410 Suite # 1100
- City and County: San Antonio ; Bexar County
- State and Zip Code: Texas, 78217
- Telephone Number: (210) 804-4500
- E-mail Address (if known):

Defendant No. 3
- Name: Dr. Ghazwan M. Kroma
- Job or Title (if known): Doctor at University Hospital
- Street Address:
- City and County: San Antonio, Bexar County
- State and Zip Code: Texas
- Telephone Number:
- E-mail Address (if known):

Defendant No. 4
- Name: University Hospital
- Job or Title (if known):
- Street Address: 4502 Medical Drive
- City and County: San Antonio ; Bexar County
- State and Zip Code: Texas, 78229
- Telephone Number: (210) 358-4000
- E-mail Address (if known):

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[X] Federal question       [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

42 U.S.C. 250 title 18 section 4005
22 U.S.C. 2702 title 22 Ch. 38, 1346B, 2672 of title 28

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

   a. If the plaintiff is an individual
      The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

   b. If the plaintiff is a corporation
      The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____,
      and has its principal place of business in the State of *(name)* _____.

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

   a. If the defendant is an individual
      The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

  b. If the defendant is a corporation

  The defendant, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

  Or is incorporated under the laws of *(foreign nation)* _____ and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3. **The Amount in Controversy**

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

---

### III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

*See Attached 4 pgs. titled "Statement of Claim" and accompanying Exhibits.*

---

### IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

*See Attached 2 pgs. titled "Relief"*

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 2-10-2021

Signature of Plaintiff: Tremont D. Williams
Printed Name of Plaintiff: Tremont D. Williams

### B. For Attorneys

Date of signing: _____

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address

ec. III pg. 1 of 4

# Statement Of Claim

1) <u>U.S. Marshal Service</u>: Did in fact house said plaintiff; Tremont Williams, at GEO facility located, 218 S. Laredo st, San Antonio, Tx. beginning on Jan. 09, 2019 until Nov. 23, 2019. The facility was structurally unsafe and provided hazardous conditions; namely pitted and uneven concrete surfaces in the recreation area. The conditions of the recreation area caused plaintiff to lose his footing during a basketball game resulting in a traumatic accident; namely simultaneous bilateral patellar tendon ruptures. (See Attached Exhibits) The said accident did in fact occur at the forementioned GEO facility on Aug. 7, 2019. As a result of the traumatic accident, the plaintiff was instantly immobilized/wheelchair bound/bedridden. Despite these facts, the plaintiff was continuously housed at the GEO facility at the discretion of the U.S. Marshall Serv. The U.S. Marshal Service was aware of the facility being out-dated and unequipped with the appropriate medical staff/equipment to accommodate an immobilized inmate. The medical cell where the plaintiff was being housed was a standardized cell that did <u>not</u> have handicapped rails; no hospital styled bedding to move or adjust the plaintiff. There was no Hoyer lift available to transport the bedridden plaintiff to and from the toilet leaving him to urinate and deficate on himself. The facility lacked proper amount of medical staff for 24hr medical care and sanitation purposes, as plaintiff was wheelchair bound. The accident occured on or about Aug. 7, 2019 and the plaintiff was not afforded emergency medical surgery until Oct. 17, 2019 (approximately 70 days later.) (see exhibits) The delaying of medical attention on the behalf of the U.S. Marshal Serv. afforded said plaintiff extended and extensive neglect, pain, sufferring, humiliation and extreme depression. Furthermore, post-op the plaintiff was still being housed at GEO facilities that lacked proper medical staff, care and accommodations leaving Mr. Williams to endure further pain and sufferring as he was forced to self-rehabilitate. It is a fact, supported by the attached exhibits, that the delay; on the behalf of the U.S. Marshal Serv., created/complicated the operation. It is also a fact that the said plaintiff will likely never return to his full previous level of function, thus affording him a permanent disability.

# Statement of Claim

1) **GEO group**: The GEO group was in fact the entity that held the contract with the U.S. Marshal Serv. at the facilities of which the said plaintiff; Tremont Williams, was housed/incarcerated Beginning on or about Jan. 9, 2019 until Nov. 23, 2019 plaintiff Tremont Williams was housed at 218 S. Laredo St., San Antonio, Tx. during which time the following did in fact occur: On Aug. 07, 2019 the said plaintiff was on the 7th floor outdoor/rooftop recreation area engaging in a game of basketball. Due to the poor conditions of the concrete flooring on the basketball court; namely pitted and uneven surfaces, the plaintiff lost his footing/balance while landing and subsequently suffered a traumatic life-changing injury. This injury became known as 'bilateral patellar tendon ruptures'. (See Attached Exhibits) Mr. Williams was transported to University Hospital in San Antonio, Tx. on Aug. 07, 2019. X-rays were taken and reviewed by Dr. Kroma of which failed to identify the bilateral patellar ruptures, as X-rays are conclusive to the bone structure. The plaintiff adamantly complained of excruciating pain and informed the GEO transport officers as well as Dr. Kroma that he was unable to stand or walk. Further examination in the form of an 'MRI' was denied and Mr. Williams was discharged and transported back to GEO facility San Antonio. On Aug. 08, 201 the GEO employed/provided Doctor examined the plaintiff and immediately diagnosed the plaintiff with bilateral patellar ruptures and requested/informed the GEO facility that there was an immediate need for surgery. At that time, GEO was properly informed of the extent of the plaintiffs injuries and medical needs. The GEO facility was not medically equipped to accommodate the needs of a immobilized inmate as there were no medical beds, Hoyer lifts, handicap railings or medical staff assigned to assist plaintiff with mobility or sanitation. Plaintiff was neglected and housed in a lock-down style cell without proper care or attention, left to urinate and deficate on himself as he was unable to navigate from bed to toilet. Plaintiff suffered excruciating pain, mental anguish, humiliation, neglect and severe depression. The accident occurred on Aug. 07, 2019 and the plaintiff had surgery on Oct. 17, 2019 thus leaving the plaintiff to suffer for 70 days under those conditions. Post-operation the plaintiff was transferred to another GEO facility on Nov. 23, 2019 located at 810 Commerce St., Karnes City Tx. At said facility Mr. Williams was subjected to the same conditions, and left to self-rehabilitate while enduring continued pain and suffering. The delay in the surgery/medical attention complicated the operation as indicated in the Attached Exhibit and contributed to permanent disability.

Sec. III pg. 3 of 4                    Statement of Claim

5) **Dr. Ghazwan M. Kroma, MD:** On Aug. 07, 2019 Tremont Williams; plaintiff, was in fact triaged and examined by Dr. Kroma at University Hospital, San Antonio, Tx. (See Attached Ex. pg 3) Dr. Kroma personally interpreted the x-rays, dictated the examination, reviewed the images and agreed with the interpretation. Dr. Kroma is/was the physician responsible for the integrity of the overall examination and performance / lack of performance by the participating medical staff involving the diagnosis/misdiagnosis of said plaintiff; Tremont Williams. At the time or date of examination the plaintiff was improperly diagnosed with having hyper-extended/over extension of his knees. The plaintiff did in fact disagree with the diagnosis and adamantly requested further treatment in the form of an MRI due to his inability to stand or walk or bend his knees. Mr. Williams was in excruciating pain which was made known to Dr. Kroma and accompanying medical staff. Despite being informed of these circumstances and being made aware of the patient's/plaintiff's request for further examination; Mr. Williams was denied further treatment and subsequently discharged from the hospital. The plaintiff's diagnosis/medical condition later became known as 'bilateral patellar tendon ruptures', which would have been discovered via 'MRI'. Dr. Kroma and accompanying medical staff at University Hospital failed to uphold and honor their oath by neglecting to administer the said plaintiff proper and appropriate medical care/treatment and diagnosis. It is a fact that this behavior left the plaintiff untreated and misdiagnosed which contributed to the extended delay/chronicity in the plaintiff recieving the appropriate diagnosis and treatment. This delay afforded the plaintiff extreme pain, extended sufferring, humiliation, mental anguish and ultimate depression as he did not think he would ever walk again. The accident occurred on Aug. 07, 2019 and the plaintiff did not recieve the appropriate operation until Oct. 17, 2019 leaving Mr. Williams to suffer for appx. 70 days under the improper/misdiagnosis of Dr. Kroma. Not only did the plaintiff suffer as a result, but the improper/misdiagno delayed the operation to the extent that it complicated and hindered the surgery. (See attached Exhibit pg. 21) The chronicity of the injury; being 70 days old, increased scar tissue, made attaching native tissues difficult and required the use of foreign materials to complete the surgery. These facts magnified the likeliness that said plaintiff will never return to his previous level of function affording him a permanent disability.

Sec. III pg. 4 of 4                    <u>Statement of Claim</u>

4) <u>University Hospital</u>:    On or about Aug. 07, 2019 University Hospital, San Antonio, Tx. did in fact employ Dr. Ghazwan M. Kroma MD. On the forementioned date plaintiff; Trevent Williams, was a patient at University Hospital. During said visit at University Hospital; plaintiff was triaged and examined and diagnosed by the medical staff employed by University Hospital/University Health System. Mr. Williams' visit was due as a result of knee injuries sustained while playing basketball at a prison located in the San Antonio area. Medical staff; oversought by Dr. Kroma, assisted and participated in the processing of Mr. Williams' condition. (ie x-rays, interview, triage etc) Mr. Williams was ultimately improperly/mis diagnosed as having hyper extended or over extending his knees. Mr. Williams was in excruciating pain, unable to stand, unable to walk or extend/bend his knees. Mr. Williams adamantly informed all participating medical staff of these facts. Mr. Williams did in fact ask for further medical treatment in the form of an 'MRI' due to the fact that he felt strongly about the given diagnosis being improper/wrong. It is a fact that the said plaintiff's requests, complaints, and demands were ignored and ultimately denied leaving Mr. Williams to suffer extensive pain and agony. Mr. Williams was discharged after recieving minimal treatment when in fact Mr. Williams had suffered '<u>bilateral patellar tendon ruptures</u>'. The lack of medical treatment; the improper diagnosis and the neglecting to honor the Oath by ensuring that said plaintiff recieved the proper and appropriate medical care on the behalf of Dr. Ghazwan Kroma and accompanying medical staff employed by University Hospital left Mr. Williams untreated and contributed to the extendended delay in plaintiff recieving the operation necessary for him to be able to walk/stand again. The medical staff at the prison where the plaintiff was being housed acted on the improper diagnosis given/approved by the medical physicians and staff employed by University Hospital which lead them to believe that the injuries sustained where not extensive thus leaving Mr. Williams untreated for appx. 70 days until he recieved surgery on Oct. 17, 2019. It is a fact that the delaying in proper medical treatment initiated by medical staff employed by University Hospital contributed to the plaintiff sufferring extensively and complicated the surgery as indicated in attached Exhibits. (pg. 21) It is a fact that University Hospital is responsible for the conduct/lack of conduct of its employees as well as the treatment/lack of treatment of its patients.

Sec. IV . pg. 1 of 2

# Relief

1.) <u>United States Marshal Service</u> : The plaintiff is asking the court to order $5,000,000; five million dollars in punitive damages for extensive and extended pain, suffering, humiliation, mental anguish and extreme depression as plaintiff was forced to endure 'bilateral tendon (patellar) ruptures' for 70 days without proper medical treatment/care. The plaintiff was left neglected in U.S. Marshal custody as if his life did not matter not knowing whether he would ever walk again. The plaintiff is entitled to said punitive damages as his Civil Rights were violated under the conditions of which he was being housed as well as the medical treatment that was not recieved. The plaintiff is now permanently disabled and will never return to his previous quality of life. The plaintiff is in constant pain on a daily basis and must now wear braces on both knees as well as utilize a walker to assist with walking. The plaintiff is on permanent pain medication. The punitive monetary damages will afford the plaintiff the necessary means to structurally modify his home or purchase a home conducive to his permanent medical condition. The plaintiff is also asking the court to award permanent medical care/treatment to plaintiff for any and all future complications associated with the injury sustained, due to the fact that the injuries were extensive and will complicate the remainder of his life.

2.) <u>GEO group LLC</u> : The plaintiff is asking the court to order $5,000,000; five million dollars in punitive damages and permanent medical/health care associated with the injuries sustained as the injuries are a permanent disability afforded to said plaintiff. The plaintiff has endured extensive and extended pain, suffering, humiliation, mental anguish and extreme depression as he was forced to endure 'bilateral patellar tendon ruptures' for 70 days without proper medical treatment/care. The plaintiff now has to live with pain management, permanent disability, and the need to use braces and walkers to assist with his daily movements. The plaintiff will need handicap accessibility in his home, as well as possible physical therapy to try to improve his quality of life. The plaintiff will likely need mental health counseling as he struggles to cope with depression associated with the reality of his life-changing condition.

Sec. IV pg. 2 of 2                    **Relief**

3.) <u>Dr. Ghazwan M. Kroma</u> : In the case of Dr. Kroma the plaintiff is asking the court to grant 250,000$ in punitive damages for malpractice. Dr. Kroma was responsible for oversight, approval and the ultimate diagnosis of the plaintiff which was improper. The neglecting to administer proper medical treatment left Mr. Williams untreated/improperly treated. The actions of Dr. Kroma lead to the plaintiff suffering extensively and delayed the necessary operation to repair the plaintiff's injury. The delay caused by Dr. Kroma's improper medical practice complicated the surgical process thus enhancing the probability that the plaintiff will never regain the quality of life he previously had. It also increased the scar tissue surrounding the area of injury that contributed to the plaintiff's permanent disability. These occurrences has caused the plaintiff extreme depression, continued pain and suffering as well as humiliation. The plaintiff asks that the court grant the forementioned punitive damages as the consequences are everlasting and ongoing.

4.) <u>University Hospital</u> : In the case of University Hospital the plaintiff is asking the court to grant 750,000$ in punitive damages for the lack of proper health care administered by the healthcare/medical staff employed/contracted by University Hospital. The behavior of the employees/medical contract workers resulted in the plaintiff experiencing lack of proper medical treatment which afforded the plaintiff extensive pain, suffering, and mental as well as physical agony. University Hospital failed to honor its oath and mission statement in the way that its employees administered healthcare services to the plaintiff of which University Hospital is responsible for. The plaintiff asks the court to hold University Hospital accountable and grant the forementioned damages to the plaintiff as every patient should be afforded equal, proper and appropriate medical treatment regardless of nationality or legal circumstances under which a patient is under.



**University Health System**

4502 Medical Drive
San Antonio, TX 78229

October 15, 2019

To whom it may concern,

    We are writing on behalf of patient Tremont Williams, 50-year-old male with bilateral patellar tendon ruptures, who suffered a traumatic injury on August 7, 2019 while incarcerated. The patient is currently wheelchair bound, unable to extend either knee and has continuous daily pain. We discussed the plan with patient for operative repair to give him the best chance of walking again. Patient Tremont Williams has agreed to have operative fixation on 10/17/2019 to bilateral knees. It is anticipated the patient will require rehabilitation for approximately 10-12 weeks and will continue to be followed by our office post-operatively. We suggest that his medical history should be taken into consideration during sentencing.

Thank you,

*[signature]*

Dr. Boris Zelle

Department of Orthopaedics

7703 Floyd Curl Drive

San Antonio, Texas 78229

Phone: 210-743-4109

Fax: 210-702-6288

*Roxanne Toney [signature]*

10/18/2019



ROXANNE TONEY
Notary Public, State of Texas
Comm. Expires 02-29-2020
Notary ID 130589867

University Hospital  
4502 Medical Dr  
San Antonio TX 78229-4493

Williams, Tremont D  
MRN: 01257571, DOB: ~~8/31/1969~~, Sex: M  
Visit date: 10/8/2019

## 10/08/2019 - Legacy Encounter in University Hospital Trauma Clinic (continued)

**Clinical Notes (continued)**



HISTORY OF PRESENT ILLNESS  
The patient is a 50-year-old male currently incarcerated in the federal prison system, who presents to clinic with a 2-month history of bilateral knee pain. Patient states that, 2 months ago, he was playing basketball when he felt a pop in both of his knees while jumping. He was initially seen at the University ER on the 7th of August, x-rays were read as no acute osseous abnormalities and he was subsequently discharged. He had persistent pain and inability to extend his knees, prompting the correction facility to obtain MRIs, which were taken at Baylor, Scott and White. Imaging is unavailable at today's visit; however, the patient does come with MRI reports, which were read as bilateral patellar tendon ruptures. He continues to be wheel-chair bound, unable to ambulate due to his injuries, and unable to extend either knee.

PAST MEDICAL HISTORY  
Hypertension.

ALLERGIES  
None.

SOCIAL HISTORY  
Endorses occasional alcohol use. Denies drug use or tobacco use.

PAST SURGICAL HISTORY  
Right ankle surgery. Right knee surgery.

FAMILY HISTORY  
Noncontributory.

REVIEW OF SYSTEMS  
12-point review of systems otherwise negative except for as noted above.

PHYSICAL EXAMINATION  
GENERAL: A well-appearing 50-year-old male in no acute distress.  
CARDIOVASCULAR: Regular rate and rhythm to palpation of distal pulses.  
RESPIRATORY: Breathing is even and nonlabored on room air.  
MUSCULOSKELETAL: Examination of the right lower extremity demonstrates significant patella alta. There is a palpable defect in the patellar tendon. He is unable to perform a straight leg raise or actively extend the knee. The knee is stable to varus and valgus stress. He is neurovascularly intact distally.  
LEFT LOWER EXTREMITY: Exam demonstrates noted patella alta with palpable defect of the patellar tendon. He is unable to perform a straight leg raise or actively extend at the knee. He is stable to varus and valgus stress. Neurovascularly intact distally.

IMAGING  
Plain films taken on today's visit demonstrate bilateral patella alta with increase in severity index bilaterally.



ASSESSMENT AND PLAN  
This is a 50-year-old male with <u>bilateral patellar tendon ruptures now two month's old</u>. We discussed with the patient the need for operative repair to give him the best chance of walking again. We will have him report to radiology this afternoon for STAT bilateral knee MRIs for preoperative planning. We will tentatively plan for surgery on the 17th of October for bilateral patellar tendon reconstructions, likely using allograft tendon to augment the repair. The risks, benefits, and alternatives to surgery were discussed and the patient risks include fixation failure, infection, knee stiffness, persistent pain, need for further surgery, death, and anesthesia complications. The patient acknowledges these risks and wishes to proceed. <u>We discussed that given the chronicity of these injuries, we likely will have a difficult time bringing his native tissues together and</u> may require intraoperative V-Y lengthening of his quadriceps as well as allograft tendon augmentation and, likely, he will never return to his full previous

University Hospital
4502 Medical Dr
San Antonio TX 78229-4493

Williams, Tremont D
MRN: 01257571, DOB: ~~8/9/1989~~, Sex: M
Visit date: 10/8/2019

## 10/08/2019 - Legacy Encounter in University Hospital Trauma Clinic (continued)

**Clinical Notes (continued)**

level of function; however, our goal with the surgery is to have him be able to walk independently without assistant devices. We will see the patient back on the day of surgery.

Adam Mann, DO

/SATS/va
dd: 10/08/2019 02:15 P
dt: 10/09/2019 11:23 A
Job # 11781226 Doc # 797359
cc:
**Electronic Signatures:**
**Mann, Adam R (DO)**  (Signed on Oct-11-2019 20:49)
        Authored
**TRANSCRIPTIONIST (MD)**  (Entered on Oct-09-2019 11:23)
        Entered

Last Updated: Oct-11-2019 20:49 by Mann, Adam R (DO)

Electronically signed by Interface, Transcription Conversion at 5/26/2020 5:44 AM

**Imaging**

### Imaging

#### XR knee 1-2 views bilat (Final result)

**XR knee 1-2 views bilat**                                   Resulted: 10/08/19 1014, Result status: Final result

Order status: Completed
Filed by: Interface, Radiology Results Conversion  04/30/20 1827
Accession number: 34897863
Lab Technician: JESSICA MORIN
Narrative
PROCEDURE(S): XR KNEE 2 VIEWS BILAT 73560
ACCESSION(S): 34897863
DATE OF EXAM: 10/8/2019 9:46 AM
REFERRING PHYSICIAN: BORIS A ZELLE, MD

Resulted by: Michael A. Davis, MD
Performed:  - 10/08/19 0946

Resulting lab: FOUNDATION RADIOLOGY SYSTEM

EXAM: Bilateral knee radiographs, 1 or 2 views each

HISTORY: pain Bilateral knees; Subsequent;

COMPARISONS: Bilateral knee radiographs dated 8/7/2019

FINDINGS:
Right:
Redemonstrated is marked patella alta.
Unchanged soft tissue thickening patellar tendon with associated heterotopic ossification. Trace marginal osteophyte formation at the patellofemoral joint space.
Mild joint space narrowing of the medial and lateral femorotibial joint spaces.
No joint effusion.

University Hospital
4502 Medical Dr
San Antonio TX 78229-4493

Williams, Tremont D
MRN: 01257571, DOB: ████████, Sex: M
Visit date: 8/7/2019

## 08/07/2019 - Legacy Encounter in University Hospital Emergency Dept. (continued)

### Medication List (continued)

Authorized by: Jacob L Brennan, MD
Start date: 10/18/2019
Quantity: 8.4 mL

Ordered on: 10/18/2019
End date: 10/16/2020
Refill: No refills remaining

**Stopped in Visit**
None

### Imaging

#### Imaging

##### XR knee 1-2 views bilat (Final result)

**XR knee 1-2 views bilat**                                   Resulted: 08/07/19 2219, Result status: Final result

Order status: Completed
Filed by: Interface, Radiology Results Conversion  04/30/20 1117
Accession number: 34804779
Lab Technician: DAVID Q VO RADIOLOGY TECH
Narrative
PROCEDURE(S): XR KNEE 2 VIEWS BILAT 73560
ACCESSION(S): 34804779
DATE OF EXAM: 8/7/2019 8:47 PM
REFERRING PHYSICIAN: SOPHIA AHMED

Resulted by: Ghazwan M. Kroma, MD
Performed: - 08/07/19 2047

Resulting lab: FOUNDATION RADIOLOGY SYSTEM

EXAM: Bilateral knee radiographs, 1 or 2 views each

HISTORY: BL knee pain s/p fall; Initial;

COMPARISONS: No relevant comparison studies are available at the time of this interpretation.

FINDINGS:
Standard 2 views of both knees are presented for evaluation.

Right:
Bony structures of the knee are in anatomic orientation. No fractures or lytic lesions are identified. Chronic degenerative changes of the right knee, with scattered osteophytosis and heterotopic calcifications about the right infrapatellar tendon.

Left:
Bony structures of the knee are in anatomic orientation. No fractures or lytic lesions are identified. Chronic degenerative changes of the left knee with minimal scattered osteophytosis. Swelling about the inferior knee as well as a small suprapatellar joint effusion.

IMPRESSION:
Mild chronic degenerative changes of the bilateral knees.

Electronically Signed by George E Ray, on 8/7/2019 9:08 PM

I, Ghazwan M Kroma, have personally interpreted the image(s) and dictated this examination or I have reviewed the image(s) as well as the residents interpretation and agree with the interpretation.

Electronically Signed by Ghazwan M Kroma, on 8/7/2019 10:19 PM

**Testing Performed By**